```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF GEORGIA
                       ATLANTA DIVISION
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL INFORMATION |
| v. | : | NO. 1:12-CR-149 (WSD) |
| | : | |
| GREGORY SCOTT DOUGLASS. | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Comes now the United States of America, by and through its counsel, Sally Quillian Yates, United States Attorney, and Cassandra J. Schansman, Assistant United States Attorney, for the Northern District of Georgia, and files this memorandum in support of the government's sentencing recommendation in this matter:

### INTRODUCTION

The Defendant pled guilty to a criminal information on June 11, 2011 charging him with two counts of distributing child pornography. (Presentence Report "PSR" ¶¶ 1-4). The mandatory minimum sentence applicable to each of these offenses is five years. (Id. at Part D). The Defendant's custody Guidelines range is 210-262 months. (Id.).

For the reasons that follow, the government believes that a sentence below the advisory Guidelines range is appropriate in this case.

**FACTUAL BACKGROUND**

On February 24, 2010, a Kansas City Cybercrime Task Force Officer signed on to his undercover Gigatribe account (a peer-to-peer sharing, a/k/a P2P, network) and noted that an individual known only by the screen name "greg8410" was also logged in. (PSR ¶ 7). The task force officer browsed the shared folders of "greg8410" and observed several files he believed depicted child pornography. (Id. at ¶ 8). The agent then downloaded approximately 36 files from "greg8410" and used a program to obtain the IP address for this account. (Id.)

On June 9, 2010, a Newark FBI Task Force Officer signed on to her undercover Gigatribe account and noted that an individual "greg8410" was logged in. (PSR ¶ 10). The task force officer browsed the shared folders of "greg8410" and observed several files she believed depicted child pornography. (Id. at ¶ 11). She also downloaded several files from "greg8410" and obtained the IP address for "greg8410." (Id.)  In both instances, the agents traced the IP address for "greg8410" to the Defendant. (Id. at ¶ ¶ 9, 11).

On July 15, 2010, law enforcement executed a search warrant at the Defendant's home. (PSR ¶ 12). An examination of the Defendant's electronic media indicated an extensive collection of both child and adult pornography.  Indeed, after a review by Special Agent Keith Kahbrel, it appears the Defendant had in

excess of 320,000 image files and over 50,000 videos of pornography of various types, distributed between two terabyte hard drives.  Within this collection SA Kahbrel determined there were 965 images and 104 videos depicting child pornography. (PSR ¶ 13).  One of these child pornography videos portrayed sadistic and masochistic acts involving a female child.  (Id.)  In addition, ten of the images were identified by the National Center for Missing and Exploited Children as identified victims of sexual abuse. (Id.)

## DISCUSSION

The Presentence Report ("PSR") properly calculates the Defendant's Total Offense Level at 37, which includes enhancements for material involving a prepubescent minor (2 levels), distribution (5 levels), material that portrays sadistic or masochistic conduct (4 levels), the use of a computer (2 levels), and an offense involving over 600 images (5 levels), along with a reduction for his acceptance of responsibility (3 levels). (PSR ¶¶ 19-30). The Defendant's criminal history is category I, which yields a Guidelines custody range of 210-262 months. (PSR ¶ 28, Part D).  In determining a reasonable sentence, the Court should begin by correctly calculating the applicable Guidelines range. Gall v. United States, 552 U.S. 38, 49, 128 S. Ct. 586, 596 (2007); United States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008). From

there, the Court should assess the factors set forth in 18 U.S.C. § 3553(a) to determine a reasonable sentence. Gall, 552 U.S. at 49-50; Pugh, 515 F.3d at 1189-90. The § 3553(a) factors include the nature and circumstances of the offense, the need for the sentence imposed to reflect the seriousness of the offense, deterring criminal conduct, and protection of the public.

Typically, the government recommends a sentence within the properly calculated Guidelines range because the Guidelines often yield a sentence that accurately reflects a defendant's culpability relative to similarly-situated individuals. The Guidelines do so by incorporating such critical elements as a defendant's criminal history, the severity of the instant offense (for example, as measured by dollar loss, drug quantity or number of victims), and mitigating or aggravating factors such as role, abuse of position of trust, and the vulnerability of the victims. Occasionally, when the government determines that the Guidelines do not adequately capture the severity (or lack thereof) of a defendant's crimes, the government may seek a departure or variance. Generally, however, the government finds that the Guidelines yield sentences that are reasonably related to a defendant's criminal conduct: more culpable defendants face higher sentences than less culpable defendants.

In this case, the government believes that a sentence within the Guidelines range, although properly calculated, is not a reasonable sentence under the factors set forth in 18 U.S.C. § 3553(a). For the reasons set forth below, the government asks that the Court impose a sentence below the Guidelines range and sentence the Defendant to a custodial term of imprisonment of 60 months. The government additionally requests that the Court impose a period of supervised release of no less than ten years. The government's analysis of the § 3553(a) factors and the grounds for its recommendation are detailed below.

### A. Offense Conduct, Nature and Circumstances, Seriousness of the Offense

The harm caused by the Defendant's conduct cannot be understated. The Eleventh Circuit has addressed the seriousness of this offense in its opinion in United States v. Pugh, 515 F.3d 1179, 1195-96 (11th Cir. 2008). The use of children in pornographic material is harmful to the "psychological, emotional, and mental health of the child." And the distribution of images of child pornography "is intrinsically related to the sexual abuse of children . . . . [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." Id. at 1195-96. "[P]ornography poses an even greater threat to the child victim

than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place." New York v. Ferber, 458 U.S. 747, 758-59 & n. 9-10, 102 S. Ct. 3348 (1982). By downloading and distributing child pornography, the Defendant has contributed to the demand for those images. Id. at 1196; see United States v. Yuknavich, 419 F.3d 1302, 1310 (11th Cir. 2005) ("a child somewhere was used to produce the images downloaded . . . , in part because individuals like [the defendant] exist to download the images.") In this case, the Defendant facilitated the distribution of images of the sexual abuse of prepubescent children. Thus, he is deserving of a substantial sentence. However, the government believes the Guidelines may overstate his culpability with respect to several of the Guidelines enhancements. For that reason, the government supports a variance from the Guidelines range in this matter.

    To begin, the four-level enhancement for images of sadistic and masochistic conduct is applicable in this case, but applies to the Defendant in full force regardless of the content or number of such images. While an enhancement for the possession of images portraying sadistic and masochistic conduct is technically appropriate, the government considers the fact, in moving for a variance, that this defendant possessed a single

video of this nature in his larger collection of over 100 videos and almost 1,000 images depicting child pornography. Thus, the government believes this single video represents an anomaly for this Defendant – unlike other defendants prosecuted for this type of conduct.

Next, there is no indication the Defendant was actively participating in the trading of images for pecuniary or other 'in-kind' remuneration.  Thus, while the Defendant was using Gigatribe, a peer-to-peer (P2P) distribution software, such software is set up to automatically "share" the libraries of its users.  Based on this and the lack of evidence of active sharing, the government believes a five-point enhancement overstates the Defendant's activities.  _See_ United States v. Spriggs, 666 F.3d 1284, 1287-89 (11th Cir. 2012).

> the function and operation of file-sharing programs exist to promote free access to information. Generally, they do not operate as a forum for bartering. For example, file-sharing programs permit a person to access shared files on peer computers regardless of whether the person in turn shares his files. The files are free. Because the transaction contemplated in the Guidelines is one that is conducted for "valuable consideration," the mere use of a program that enables free access to files does not, by itself, establish a transaction that will support the five-level enhancement.

_Id._  In Spriggs, the 11th Circuit noted that "while the defendant's participation in the P2P file sharing program was set to allow downloads of files, this, without more, would not

support a 'transaction conducted for valuable consideration.'" Id. at 1288. Indeed the Court noted that "[w]ithout evidence that [the defendant] and another user conditioned their decisions to share their illicit image collections on a return promise to share files, we cannot conclude there was a transaction under which [the defendant] expected to receive more pornography." Id. Nor was an expectation of a promise of faster downloads because of the volume of trading sufficient to support the enhancement. Id. For these reasons, the government believes the Defendant's conduct only supports a two-level enhancement.

Lastly, the Defendant's offense level has been enhanced based upon his use of a computer, an enhancement that is now commonplace in child pornography prosecutions. Because the Defendant's use of a computer enabled him to easily receive and share child pornography with others, some consideration of its use is appropriate. But because the use of a computer is so common in child pornography offenses, and necessary for the trading of files via P2P networks, the two point enhancement may not properly reflect the seriousness of the Defendant's conduct as compared to similarly situated individuals when considered in light of the relevant 3553(a) factors.

In sum, although the Guidelines range has been properly calculated by the probation officer, it is the government's

position that in this case the Guidelines range does not properly reflect the culpability of this Defendant, particularly when compared to other offenders who have been convicted of the same offense.

**B. History and Characteristics of the Defendant**

The government does not dispute that the Defendant has no criminal history and that he has cooperated with law enforcement since he retained counsel in July 2010. But that does not change the fact that the Defendant has spent substantial time searching for, downloading, saving and distributing images portraying the sexual abuse of young children. Thus, although the Defendant does not have a documented criminal history, the evidence supports the conclusion that the Defendant has been searching for, downloading, and distributing child pornography for a lengthy period of time. In contrast, the Defendant is 67 years of age and, with the exception of one incident over 20 years ago, has been a law abiding citizen throughout those 67 years.

**C. Just Punishment**

The Defendant appears to have searched for and accumulated a significant collection of both adult and child pornography. And while the child pornography is egregious, it represents a very small part of this extensive collection. Indeed, his collection of child pornography represents less than one percent of his entire collection. Thus the government believes that a

variance is proper in this case and a sentence at the mandatory minimum is just punishment for this Defendant.

**D. Deterrence and Protection of the Public**

The need for deterrence is particularly compelling in the context of child pornography offenses. United States v. Pugh, 515 F.3d 1179, 1194 (11th Cir. 2008). The Eleventh Circuit, citing the Seventh Circuit, wrote in Pugh that,

> young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded - both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least that is what Congress thought when in 18 U.S.C. 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more it will be produced.

515 F.3d at 1194 (quoting United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007). A sentence at the mandatory minimum will provide the proper deterrent to future misconduct, not just for the Defendant, but to others with a similar appetite for images portraying the sexual abuse of children. Furthermore, such a sentence serves the purpose of protecting the public from consumers of images that portray the sexual abuse of children.

## CONCLUSION

Having analyzed the applicable Guidelines enhancements in the context of the Defendant's culpability, viewing the facts of

this case in comparison to matters involving similarly-charged defendants, and considering the factors set forth in 18 U.S.C. § 3553(a), the government recommends that this Court impose a sentence below the applicable Guidelines range, that is the mandatory minimum. The government respectfully requests that this Court impose a sentence of 60 months incarceration and a period of supervised release of no less than 10 years.

Respectfully submitted, this 14th day of August, 2012.

                                  SALLY QUILLIAN YATES
                                  UNITED STATES ATTORNEY


                                  /s/ Cassandra J. Schansman
                                  CASSANDRA J. SCHANSMAN
                                  ASSISTANT U.S. ATTORNEY
                                  600 U.S. Courthouse
                                  75 Spring Street, SW
                                  Atlanta, Georgia 30303
                                  (404) 581-6083
                                  Ga. Bar No. 183184

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

```
UNITED STATES OF AMERICA     :
                             :    CRIMINAL INFORMATION
     v.                      :    NO. 1:12-CR-149 (WSD)
                             :
GREGORY SCOTT DOUGLASS.      :
```

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1C

This is to certify that the foregoing document was formatted in accordance with Local Rule 5.1B in Courier New font, 12 point type.

### CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the persons listed below a copy of the foregoing document via the Electronic Case Filing system of the United States District Court for the Northern District of Georgia, which will automatically send an e-mail notification of such filing to the following attorneys of record:

>  Mr. Patrick McDonough
>  Ms. Trinity Hundredmark
>  Andersen, Tate & Carr, P.C.
>  1960 Satellite Blvd., Suite 4000
>  Duluth, GA 30097
>  pmcdonough@atclawfirm.com
>  thundred@atmlawfirm.com

This 14th day of August, 2012.

>  /s/ Cassandra J. Schansman
>  CASSANDRA J. SCHANSMAN
>  ASSISTANT UNITED STATES ATTORNEY